MASLIN v. CHILDS et al.

(Supreme Court, Appellate Division, Fourth Department. July 11, 1911.)

1. LANDLORD AND TENANT (§ 169*)—INJURIES FROM NEGLIGENCE—QUESTION FOR JURY.

In an action for the wrongful death of plaintiff's wife, whether the veranda from which deceased fell and the stairway leading thereto, were used jointly and in common by plaintiff and other tenants of the apartment building, and were intended to be so used by such tenants and the defendant landlord, and whether the landlord retained custody and control of such veranda and stairway for the joint use of the tenants, *held*, on the evidence, for the jury.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 169.*]

2. LANDLORD AND TENANT (§ 164*)—VERANDA—LANDLORD'S DUTY TO TENANT.

Where a landlord retains the custody and control of a veranda in the rear of an apartment building which is jointly occupied by his tenants, he must exercise reasonable care to keep it in repair and in a reasonably safe condition for their use.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 630–641; Dec. Dig. § 164.*]

3. LANDLORD AND TENANT (§ 169*).

In an action by the administrator of a tenant killed by the giving way of the railing of a veranda in the rear of an apartment building, the question of defendant's negligence as to the repair and safety of the railing *held* for the jury.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 169.*]

4. TRIAL (§ 46*)—OFFER OF PROOF—STATEMENT OF PURPOSE OR PROOF.

Where plaintiff, in an action against his landlord for negligence, offered in evidence the defendant's answer, without stating the purpose for which it was offered, the answer, though competent as an admission bearing upon an issue in the case, is properly excluded.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 115–117; Dec. Dig. § 46.*]

Action by George Maslin as administrator, etc., against John R. Childs and others. A nonsuit was granted at the close of plaintiff's evidence, and plaintiff moved for new trial on exceptions ordered to be heard in the first instance by the Appellate Division. Exceptions sustained, and motion for new trial granted.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Frederick Wiedman, for plaintiff.
William W. Webb, for defendants.

McLENNAN, P. J. The accident which is the subject of this action occurred at about 7 o'clock on the morning of June 10, 1908. At the

time, the plaintiff with his wife, the deceased, were occupying apartments over a store on Lyell avenue, in the city of Rochester, which they had rented from the defendants. The apartments over the store adjoining on the east were occupied by a family named Bemish, who also rented from the defendants. There was a veranda in the rear of such apartments, extending across the entire width, constructed of five posts, which are designated in the testimony as 1, 2, 3, 4, and 5, between each of which there was an ordinary rail, and from the underside of it spindles extended to a rail at the floor. Posts Nos. 1 and 2 were located immediately in the rear of plaintiff's apartments, and 3, 4, and 5 immediately in the rear of the Bemish apartments. On the morning in question, plaintiff's intestate passed through her kitchen door and onto the veranda. She went easterly and when between posts 2 and 3, wholly in the rear of the Bemish apartments, she fell or leaned against the rail between such posts, the post gave way, and the deceased was precipitated to the ground below and she sustained injuries from which she died soon thereafter.

That the accident happened as claimed by the plaintiff and without negligence on the part of his intestate is fairly inferable from the evidence, and is such as would justify a jury in so finding. Indeed, defendants' counsel does not contend to the contrary upon this appeal. So that the only question which need be here considered, aside from an exception to which attention will be called, is, Does the evidence, construed most favorably to the plaintiff, tend to establish actionable negligence against the defendants?

There was a separate entrance leading from Lyell avenue to the apartments of the plaintiff and of the Bemish family, and immediately in the rear of plaintiff's apartments there was a stairway leading from the veranda to the ground. There was also a separate way of exit in the rear of the Bemish apartments by means of an inside stairway which led under the veranda and to the back yard. So that there was a way of ingress and egress to the rear of such apartment, and therefore it was not necessary that either of such tenants should use the way of the other in order to enable them to occupy the veranda or reach the back yard, but it is apparent that it was more convenient for the Bemish family to use the stairway leading directly from the veranda to the ground and which was located immediately in the rear of plaintiff's apartments.

The evidence tends to show that the tenants of each of the apartments in question occupied the veranda and the back stairway leading from it to the ground in common, and that they had been so used from the time the plaintiff and his wife became such tenants with the knowledge of the defendants or their agent. A Mr. Wagg occupied the westerly store, which was directly under plaintiff's apartments. He was the agent of the defendant for the entire property, rented the same, collected the rents, and it was under his charge and control. Mr. Wagg rented plaintiff's apartments to him more than 13 months previous to the accident, and during all that time knew how the veranda and back stairway were being used by the respective tenants. At the time the plaintiff rented his apartments nothing was said by Mr.

Wagg as to how the portion of the veranda and stairway immediately in the rear should be used or anything to the effect that the plaintiff and his family were to have the exclusive use of the same. Mr. Wagg testified:

"I have gone to the Bemish's apartments. I took my dinner with them. I went up there on the open stairway. I mean the outside stairway. I did it once a day. * * * I have seen others using that stairway, but I don't know whether it was from Bemish's or Maslin's. I have seen some of the Bemish family using the stairway. I have seen Mr. and Mrs. Bemish come down to the store on that stairway and carry down a pail of ashes or something like that. Immediately in the rear of the veranda there is a yard, probably 20 or 25 feet. It is used for a driveway. We load our wagons there. There is a driveway on the east and the west side of the building. Those driveways are used by us or anybody who wanted to deliver goods. I have seen peddlers drive in there."

The witness further says:

"I never gave to any of the Bemish family permission to cross the veranda of the Maslin's. I never said anything to them about it at all. I know they were using it."

Mr. Schlitzer, a witness sworn for the plaintiff, testified:

"I have used this stairway in the rear of the veranda to carry up groceries to Maslin and Bemish. I used it a while, while I worked for Ford. I had used it to go to Bemish's before the accident. I don't remember how long I used it. I have used it a number of times. Q. Give us some idea how long you did use it, prior to the accident, to go to Bemish's? A. About a year—I don't remember."

The witness also testified that he had seen the Bemish children—2, 5, and 10 years of age—playing on the veranda from the top of the veranda over to Bemish's back porch, and that he had seen a boarder of the plaintiff sitting on the veranda between posts 2 and 3. The plaintiff testified that he had seen the Bemish folks using the stairway and that it was used to carry coal. "Ours went up that way; Bemish's coal box sat on the north wall." The coal box referred to was in the rear of the Bemish apartments.

[1] From the whole evidence bearing upon the question we think it was for the jury to say whether the veranda from which plaintiff's intestate fell, and the stairway leading thereto, were not used jointly and in common by the tenants of the apartments in question and were not intended so to be by such tenants and the defendants, and whether the defendants did not retain the custody and control of such veranda and stairway for the joint use of such tenants.

[2] If so jointly occupied, and the custody and control was retained by the defendant for the joint use and occupancy of their tenants, under the well-settled rule the defendants owed to their tenants the duty of exercising reasonable care in keeping the veranda in repair and in a reasonably safe condition for their use. The situation in this case is no different than if the veranda had been a hall in an apartment house reserved by the landlord for the common use of his tenants.

Peil v. Reinhart, 127 N. Y. 381, 27 N. E. 1077, 12 L. R. A. 843, was an action to recover damages for injuries received by the plaintiff who, as tenant, occupied rooms in defendant's tenement house, from

a fall caused by the defective condition of a carpet on a stairway provided by defendant for the common use of his tenants. It was held:

"That it was defendant's duty to keep the stairway in repair and suitable condition for the safe passage of his tenants over it, and he was liable for injuries suffered by them without their fault while properly using the stairway, resulting from a failure to perform this duty."

The case of Dollard v. Roberts, 130 N. Y. 269, 29 N. E. 104, 14 L. R. A. 238, was an action to recover for loss of services, etc., of the plaintiff's minor daughter as the result of injuries to her from the falling of plaster from the ceiling of a hallway on the ground floor in a tenement house owned by the defendant, an upper floor of which was leased to and occupied by the plaintiff and his family, which hallway was used in common by the tenants, and it was held:

"That the defendant owed to his tenants the duty of exercising reasonable care in keeping the hallway in suitable repair and condition for their use."

In the case of Clarke v. Welsh, 93 App. Div. 393, 87 N. Y. Supp. 697, the facts are concisely stated in the headnote as follows:

"A four-story building contained stores on the ground floor and apartments upon each of the upper floors. At the rear of the building were four balconies on a level with the several floors. The balconies were connected by stairways which were used by the tenants of the several apartments in reaching a common cellar and yard. On one occasion, a woman, who resided with her family upon the second story of the building, came down the common stairway to the balcony in the rear of the store on the first floor of the building and leaned over the railing for the purpose of calling to her children who were in the yard below. While in this attitude, the railing fell, precipitating the woman to the ground and causing her to sustain injuries which resulted in her death."

In an action brought against the owner of the building to recover damages resulting from the death of the woman and in which a recovery was had, it was held:

That a judgment entered "upon a verdict in favor of the plaintiff should be affirmed; that the evidence warranted a finding that the defendant owed the intestate the duty of exercising reasonable care to make the balcony railing in the rear of the store reasonably safe, and that the defendant had been negligent in that respect."

[3] The evidence in the case at bar tends to show that the defendants exercised no care to ascertain whether or not the railing upon the balcony was in a reasonably safe condition. It had been constructed some nine years before the accident, constructed out of lumber the life of which, as testified to by an expert, under the conditions in which it was placed was not to exceed four or five years. It appears that for several years a conductor pipe taking water from the roof was cracked or broken and was in such condition that the water ran down by the side of the post with which the railing was connected and it is urged that such dripping upon the rail caused it to become decayed and rotten, and that the defendants ought to have exercised some care to prevent the continuance of such condition. It also appears that the roof of the veranda leaked in many places so as to keep the railing and posts damp and thus cause them to rot and decay. The railing in question which gave way was so rotted that it would not hold the nails which

attached it to the post; in fact, one witness says that you could pull the nails out of it with the fingers. The railing was painted and its condition was not visible to the plaintiff or to his intestate, but a most casual inspection would have disclosed the fact that the rail was rotted and was in a dangerous and unsafe condition. The defendants' agent, Mr. Wagg, was on the premises almost daily, but he never made any examination to see whether they were safe or otherwise, and neither of the defendants were upon the premises during the time the plaintiff occupied the premises. Many other facts and circumstances might be referred to bearing upon the question as to whether the defendants used reasonable care in seeing to it that the railing was in safe condition. Upon all the evidence, we think that the question of defendants' negligence was one of fact for the jury.

[4] Plaintiff offered in evidence the original answer served by the defendants, it being claimed in appellant's brief that such answer contained an admission as follows:

"Defendants also admit that on the said floor and in the rear of plaintiff's apartment there was a veranda and staircase which were used by the plaintiff and others for access to their several apartments as in said complaint alleged."

The receipt of the original answer in evidence was objected to by the defendants, the objection was sustained, and the plaintiff's counsel duly excepted. We think, however, that the exception is not available to the plaintiff because he failed to state for what purpose the answer was offered in evidence. Clearly, it was only competent as an admission bearing upon a question of fact which was in issue in the case but, it not having been offered for such purpose, we think the court did not commit error in excluding it.

But upon all the evidence, for the reasons above indicated, we think the question of defendants' negligence ought to have been submitted to the jury, and that error was committed in granting defendants' motion for a nonsuit.

It follows that the motion for a new trial should be granted, with costs to the plaintiff to abide the event. All concur.